IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEBORAH GASKE, *et al*     *

  Plaintiffs,      *

  v.        *   Civil Case No.: 1:18-cv-02630-JMC

CRABCAKE FACTORY    *
SEAFOOD HOUSE, LLC, *et al*
          *
  Defendants.
          *

 * * * * * * * * * * * * * * *

## **MEMORANDUM OPINION**

On August 25, 2018, Plaintiff Deborah Gaske, on behalf of herself and others similarly situated, filed a collective action claim against Defendants Crabcake Factory Seafood House, LLC, Satellite Restaurants Inc. Crabcake Factory USA, John J. Brooks, and Krista Schrider,[1] alleging violations of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL. §§ 3-401 *et seq.*, and the Maryland Wage and Collection Law, MD. CODE ANN., LAB. & EMPL. §§ 3-501 *et seq.* (ECF Nos. 62 at 3; 86 at 1).

Now pending before the Court are the following motions: Plaintiffs' Motion for Sanctions (Failure/Refusal to Appear for Deposition in Violation of Order) (ECF No. 86); Plaintiffs' Motion for Sanctions (Failure to Answer/Respond Written Discovery—John Brooks) (ECF No. 87); Plaintiffs' Motion for Sanctions (Failure to Answer/Respond Written Discovery—Krista [Schrider]) (ECF No. 88); Defendants' Motion to Compel Discovery (ECF No. 89); Plaintiffs'

---

[1] During this litigation, Defendant Krista Schrider changed her surname name from Brooks.  Throughout this opinion, the Court shall refer to her as Krista Schrider for correctness and consistency.

Motion for Order Resetting Deadlines (ECF No. 100); and Plaintiffs' Motion to Compel Production of Documents (ECF No. 139).

When it appeared as though one or more of the Defendants was considering bankruptcy, this Court imposed a stay on August 31, 2020, pursuant to the Court's obligation to manage cases in a manner that will promote the just, speedy, and inexpensive resolution of actions.  *See* Fed. R. Civ. P. 1; (ECF Nos. 101; 107; 117).  The Court lifted the stay on March 15, 2021 and permitted discovery to proceed as to the individual, non-debtor defendants.  (ECF No. 127).  Discovery in this matter closed, subject to a few limited exceptions, on June 15, 2021.  *Id.* at 1.  By letter order dated June 21, 2021, the Court directed the parties to advise whether the discovery motions filed before the imposition of the stay were now moot.  (ECF No. 138 at 1).  If no response was received, the Court advised that it would "deem these motions moot in light of the parties' representations that discovery has been completed."  *Id.*  Plaintiffs filed a letter correspondence addressing each of its pre-stay motions (ECF No. 140); Defendants did not.  *See* Docket.  The issues have been fully briefed (ECF Nos. 94; 96; 99) and no hearing is necessary.  *See* Local Rule 105.6. (D. Md. 2021).

For the reasons more fully explained below: Plaintiffs' Motion for Sanctions (ECF No. 86) is DENIED; Plaintiffs' Motion for Sanctions (ECF No. 87) is DENIED; Plaintiffs' Motion for Sanctions (ECF No. 88) is DENIED; Defendants' Motion to Compel (ECF No. 89) is DENIED AS MOOT; Plaintiffs' Motion for Order Resetting Deadlines (ECF No. 100) is DENIED AS MOOT; Plaintiffs' Motion to Compel Production of Documents (ECF No. 139) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The underlying facts of this case are not relevant for purposes of this opinion.  Thus, the Court will confine its description of the relevant background to the procedural events giving rise to the pending motions.

### I.    *Motions for Sanctions*

Plaintiffs' motions arise out of Defendants' "deliberate refusal to sit for depositions," (ECF No. 86 at 1), and "deliberate failure to respond to written discovery."  (ECF Nos. 87 at 1; 88 at 1). To the former, a series of email correspondences encapsulates the essence of the parties' dispute. *See* (ECF No. 86-4).  On May 25, 2020, Defense Counsel advised Plaintiffs' Counsel that "Johnny Brooks and Krista [Schrider] would be available any day during the last week of June for a remote deposition." (ECF No. 86-4 at 8).  Plaintiffs' Counsel responded that Plaintiffs would proceed with depositions of the Defendants "on June 26[] in Greenbelt, Maryland.  *Id.* at 7.  Defense Counsel noted Defendants availability on June 26, but reiterated that Defendants "are available to attend depositions remotely."  *Id.* at 6.  Plaintiffs' Counsel responded in part, "[w]ith things opening up, I think we can meet in person and we will take some precautions in doing so."  *Id.*  By June 4, 2020, Defense Counsel made his position clear:

> my clients are not traveling to Greenbelt to attend an in[-]person deposition on June 26.  If you would like to proceed with depositions on June 26, my clients will attend via video conference.  A remote, video deposition overcomes both the health risk, as well as the geographic problem, with your deposition request.

*Id.* at 5.  Plaintiffs' Counsel made his position equally as clear:

> It is regrettable but we do not agree to have a remote deposition, and I do not agree with further postponements in this case.  It is great when counsel can reach agreements, but depositions are not voluntary.  But [sic] your clients are being noticed for deposition, and they must post.

*Id.* at 4.  That same day, Plaintiffs' Counsel noticed Defendants' depositions and served copies of same to Defense Counsel.  (ECF No. 86-5).  Plaintiffs' Counsel set the depositions at Planet Depos in Greenbelt, Maryland on June 26, 2020.  *Id.*

Defense Counsel revisited discussions via email on June 23, 2020.  (ECF No. 86-4 at 3–4).  Defense Counsel advised Plaintiffs' Counsel that "Johnny Brooks does feel comfortable with attending in person despite the risks.  Krista [Schrider] on the other hand does not."  *Id.* at 4.  Defense Counsel further explained that Krista

> currently works with high risk individuals in her capacity as an active mid-wife, and she herself has an underlying condition that places her in the high risk category. As such, and as we offered throughout this process, she will be available to be deposed remotely at 2:00 PM on Friday.

*Id.*  Plaintiffs' Counsel promptly responded, in part, "I do not agree to this. . . . I expect her to post."  *Id.* at 3.  Minutes later, Defense Counsel informed Plaintiffs' Counsel that Krista "will not be there.  I have made arrangements with Planet Depos for her to appear remotely.  As a further show of good faith, we would be will[ing] cover the expense of her deposition."  *Id.* at 2–3.  Plaintiffs' Counsel again stated that this arrangement was not agreeable.  *Id.* at 2.

On June 25, 2020, Defense Counsel notified Plaintiffs' counsel that Krista Schrider was exposed to COVID-19 and that Johnny Brooks was experiencing COVID-19 symptoms.  (ECF No. 86-6 at 2).  Defense Counsel expressed discomfort with the in-person deposition set to occur the following day and reiterated that neither of the Defendants would appear in person.  *Id.*  Defense Counsel added,

> [i]n order for you not be prejudiced by this[,] I'd ask the court today to extend the discovery deadline by 60 days to allow us to coordinate video conference depositions.  If we can't agree on video vs. in person, then it will also give us time to ask the court for guidance.

*Id.* Plaintiffs' Counsel agreed to an extension of the discovery deadline through July with three limitations: the extension is "(1) just for the purpose of closing these three depositions of the Defendants; (2) at your [Defendants'] expense; and (3) we will do [depositions] remotely - they will need to appear with adequate lighting, without interruption, and appropriate camera quality." (ECF Nos. 86 at 8; 86-6 at 1).

Following the parties' consent motion, this Court entered a Fourth Amended Scheduling Order on June 29, 2020, (ECF No. 85), which set a deadline of July 31, 2020 for the completion of Defendants' depositions.  (ECF No. 85).  Thereafter, on July 15, 2020, Plaintiffs' Counsel noticed Defendants' rescheduled, remote depositions for July 30, 2020 and July 31, 2020.  (ECF No. 86-7).  One week later, Plaintiffs' Counsel emailed Defense Counsel to confirm details of the remote depositions.  (ECF No. 86-8).  Defense Counsel responded by letter.  (ECF No. 86-9). Among other things, Defense Counsel's letter: (1) stated a dispute concerning Plaintiffs' response to Krista Schrider's written discovery requests; and (2) asserted that Defense Counsel believed a potential conflict of interest arose from joint representation of both the individual and corporate Defendants.

In response, Plaintiffs filed the instant motion for sanctions and motions to compel. Defendant Krista Schrider filed a motion to compel.  Defendants' depositions did not occur as noted.  On August 11, 2020, Defense Counsel filed a Motion to Stay, which this Court ultimately granted, *see* (ECF Nos. 92; 101), and Motions to Withdraw as Attorney, which this Court ultimately denied without prejudice.  (ECF Nos. 93; 97; 127).  This matter was stayed from August 31, 2020 through March 15, 2021.  (ECF Nos. 101; 107; 117; 127).

## II.    *Motion to Compel*

The Court's March 15 Order permitted discovery to proceed as to the non-Debtor Defendants.  (ECF No. 127).  As a part of that discovery, Plaintiff propounded a request for production of documents upon both Defendants seeking the following:

> For each social media and networking website and/or application which you have used and/or maintained an account since August 27, 2015, please provide a copy of all non-privileged content and data.  In the event you assert content or data is privileged, please identify the content or data you are withholding in a privileged log.

(ECF Nos. 139 at 3; 141 at 1–2).  Defendants object on the grounds that the request is overbroad, seeks information that is not relevant to any party's claims or defenses, and seeks documents that are equally available to the propounding party.  (ECF No. 141 at 1–2).

## DISCUSSION

## I.    *Motions for Sanctions (ECF Nos. 86, 87, and 88)*

Plaintiffs ground their motions for sanctions on Rule 37(b) and (d), which empower a court to issue a variety of sanctions when a party fails to comply with a court order or discovery order. (ECF No. 86 at 11).  Rule 37 enumerates a variety of sanctions, that "may include":

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii); (d)(3).

Rule 37 vests a court with broad discretion when deciding to impose sanctions.  *Mut. Fed. Sav & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).  However, such

broad discretion is constrained where the proposed sanction "is judgment by default." *Id.* In such cases, "the district court's 'range of discretion' is more narrow because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Id.* (quoting *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978)). To weigh these competing interests, courts in the Fourth Circuit apply a four-factored test set out in in *Wilson*, which includes: "(1) whether the non-complying party acted in bad faith, (2) the amount or prejudice his noncompliance caused his adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) the effectiveness of less drastic sanction." *Id.* (quoting *Wilson*, 561 F.2d at 503–06). Weighing of these factors ensures "that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Id.* (citation omitted).

Plaintiff seeks default judgment against all Defendants and attorneys' fees and costs awarded against the Defendants and their counsel. (ECF Nos. 86 at 13; 87 at 4; 88 at 4). After consideration of the *Wilson* factors, explained in greater detail, *infra*, this Court declines Plaintiffs' invitation to impose such an extreme sanction.

A.     Bad Faith

This Court does not find that Defense Counsel's actions amount to bad faith. This case is one of many that proceeded through discovery during the outbreak of the novel COVID-19 pandemic, the effects of which were swift and severe. The Court credits Defense Counsel's explanation concerning the effects of the pandemic on Defendants' depositions in June and July of 2020. Exposure to the virus and/or displaying symptoms of COVID-19 is a justifiable reason to cancel an otherwise properly noted in-person deposition. As a show of *good* faith, Defendants

repeatedly offered remote depositions and ultimately offered to mitigate the disruption to discovery by offering to pay for the costs of a remote deposition. This Court does not view Defense Counsel's actions as "a pattern of indifference and disrespect to the authority of the court." *Mut. Fed. Savs. & Loan Ass'n.* 872 F.2d at 93. Accordingly, this factor weighs in favor of the Defendants.

B.    Prejudice

As to the second factor, the Court finds that prejudice to Plaintiff is minimal. And, to the extent that Plaintiff was prejudiced, the parties' participation in discovery since the lifting of the stay has cured such prejudice. Plaintiffs' motion for sanctions concerning depositions (ECF No. 86) makes no mention of prejudice. Indeed, the only reference to prejudice is made by *Defendants*, where Defense Counsel offered concessions to *avoid* prejudice to Plaintiffs. (ECF No. 86 at 7). Plaintiffs' lone complaint of prejudice in their motions for sanctions concerning written discovery, when filed in July of 2020, is the same in both motions: "The delaying of discovery answers and documents from Defendant [John Brooks and Krista Schrider] in this case, if left uncorrected, leaves the Plaintiffs unprepared for Trial and otherwise prejudiced in light of Defendants' denials of liability." (ECF Nos. 87 at 2; 88 at 2). Subject to the motion to compel social media evidence, resolved *infra*, Plaintiffs now represent that "[d]iscovery has been completed insofar as neither Party seeks to serve additional Interrogatories or Requests for Production of Documents or conduct any additional depositions." (ECF No. 137 at 1).

It is incontestable that the information Plaintiffs sought is now in their possession and Plaintiffs cannot be said to be "unprepared for [t]rial" or otherwise prejudiced. Clearly, Plaintiffs' ability to establish its case has not been impaired; Plaintiffs intend on filing a motion for summary judgment as to the substance of their claims. *Id.*; *see Wilson*, 561 F.2d at 505. Therefore, absent

cognizable prejudice and "the normal rule that the proper sanction 'must be no more severe …

than is necessary to prevent prejudice to the movant,'" *Wilson*, 561 F.2d at 504, this factor weighs

in favor of Defendants.

C.      Deterrence and Less Drastic Sanctions

Third, this Court must consider the need to deter the particular sort of non-compliance.

Here, the "non-compliance" at issue was Defendants' failure to appear at depositions after

exposure to COVID-19 and Defendants' exhibiting symptoms associated with same.   This

behavior is not of the sort that must be deterred.  As to Defense Counsel's interactions with Planet

Depos without the consent of Plaintiffs' Counsel, an admonishment will suffice.  Counsel should

refrain from unilaterally modifying the arrangements of another party's noted deposition, even if

it the conditions are unfavorable or objectionable.  Instead of contacting Planet Depos to modify

Defendants' deposition from in-person to remote, without Plaintiff's consent, Defense Counsel

could have sought other relief, such as a protective order under Rule 26(c).  In all likelihood, this

would have brought the dispute to the Court's attention for resolution and obviated the present

motions.  Counsel are jointly reminded that cooperation and civility are pillars of the adversarial

process.  As is stated in Appendix A, Guideline 1d., of this Court's Local Rules:

> Attorneys are expected to behave professionally and with courtesy towards all
> involved in the discovery process, including but not limited to opposing counsel,
> parties, and non-parties.   This includes cooperation and civil conduct in an
> adversary system.  Cooperation and civility include, at a minimum, being open to,
> and reasonably available for, discussion of legitimate differences in order to
> achieve the just, speedy, and inexpensive resolution of the action and every
> proceeding.   Cooperation and communication can reduce the costs of discovery,
> and they are an obligation of counsel.

While the Court sincerely believes that a touch more cooperation and communication on the

logistics of an in-person or remote deposition arrangement could have resolved the issue without

court intervention, the need for deterrence is low; this factor weighs in favor of Defendants.

The Court finds that the fourth factor—the effectiveness of less drastic sanctions—also weighs against dismissal because less severe sanctions than default judgment would, if required, be effective in this case.  "[T]he Fourth Circuit has 'encouraged trial courts initially to consider imposing sanctions less severe than default.'"  *Steigerwald v. Bradley*, 229 F. Supp. 2d 445, 449 (D. Md. 2002); *see also LeCompte v. Manekin Constr. LLC*, 753 B.R. 187, 196 (D. Md. 2017), *aff'd*, 706 F. App'x 811 (4th Cir. 2017) (citation omitted) (noting that the Fourth Circuit has upheld the grant of default judgment "as a last-resort sanction following the . . . continued disregard of prior warnings.").  As the instant motions present the first opportunity to consider the imposition of sanctions in this case, the Court will heed the Fourth Circuit's encouragement and refrain from imposing judgment by default as a first sanction.  This exercise in restraint affords a noncompliant party with "fair warning" that default judgment could, under the appropriate circumstances, be a necessary sanction.  *Id.*  However, judgment by default would be especially inappropriate here, where, even absent court intervention, the parties completed the bulk of discovery.  (ECF Nos. 136 at 1; 137 at 1).  This is not the "flagrant case" where default judgment is an appropriate sanction. *Wilson*, 561 F.2d at 504.  Plaintiffs' Motions for Sanctions, (ECF Nos. 86; 87; 88), are denied.

## II.    *Defendants' Motion to Compel (ECF No. 89) and Plaintiffs' Motion for Order Resetting Deadlines (ECF No. 100)*

As briefly noted, *supra,* by letter order dated June 21, 2021, the Court directed the parties to advise whether the discovery motions filed before the imposition of the stay were now moot. (ECF No. 138 at 1).  The Court advised that if no response was received, the motions would be deemed "moot in light of the parties' representations that discovery has been completed."  *Id.* Defendants did not file a response.  *See* Docket.  Accordingly, Defendants' motion to compel, (ECF No. 89), is denied as moot.  Plaintiffs advise that their Motion for Order Resetting Deadlines

is moot.  (ECF No. 140 at 3).  As such, Plaintiffs' Motion for Order Resetting Deadlines, (ECF No. 100), is denied as moot.

### III.       *Plaintiffs' Motion to Compel (ECF No. 139)*

At the outset, the Court notes that it set a specific briefing schedule for resolution of Plaintiffs' motion to compel social media discovery so that this matter could proceed to dispositive motions.  *See* (ECF No. 138 at 1).  In its June 21, 2021 Letter Order, the Court provided:

> Plaintiff's Motion shall be filed by June 29, 2021.  Defendants' response is due no later than July 8, 2021, and *Plaintiff's reply, if desired, is due no later than July 14, 2021.*  Accordingly, the dispositive motion deadline is reset to thirty (30) days after this Court's decision on the motion to compel.

*Id.*  (Emphasis added).  Plaintiffs filed the Motion on June 29, 2021.  Defendants filed a response in opposition on July 8, 2021.  The July 14, 2021 deadline for Plaintiffs to file a reply passed, and none was filed.  *See* Docket.  More than one week later, on July 22, 2021, Plaintiffs filed a belated Reply.

The Court will not consider Plaintiff's reply and the arguments contained therein for two reasons.  First, the reply is clearly untimely, and Plaintiffs' failed to file it within the briefing schedule imposed by the Court.  Second, a reply brief is intended to *reply* to arguments made in an opposing party's response.  "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered."  *Clawson v. FedEx Ground Packaging Sys.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).  The underpinnings of the rule act "to avoid prejudice to the party who is not afforded a chance to rebut a new argument."  *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013).  While the Court recognizes that the "power to decline consideration" of new arguments raised for the first time in a reply brief is "discretionary," and "courts are not precluded from considering such issues in appropriate circumstances," this is hardly the

appropriate circumstance. *Clawson*, 451 F. Supp. 2d at 734. Plaintiff's opening brief is styled as a motion to compel and the substance of the brief addresses that pending matter. However, Plaintiff's belated reply attempts to morph a motion to compel into a motion for sanctions grounded in a Rule 37 spoliation argument. Reserving such an argument for reply prejudices Defendants, who are not able to meaningfully respond. And, raising new arguments in reply deprives the Court of the necessary information to resolve the dispute, as the only positions before it are that of the party filling the reply. Therefore, to the extent Plaintiffs raise new arguments in their reply, the Court declines to consider same.[2]

Turning now to the merits of Plaintiffs' motion to compel, a recent decision of this Court sets out the pertinent discovery principles at issue when a party seeks social media:

> [D]iscovery of social media "requires the application of basic discovery principles in a novel context." *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 114 (E.D.N.Y. 2013) (quoting *Equal Emp't. Opportunity Comm'n. v. Simply Storage Mgmt.*, LLC, 270 F.R.D. 430, 434 (S.D. Ind. 2010)). Generally, social media content, even where designated as "non-public," is neither privileged nor protected by any right of privacy (beyond, of course, the protections any litigant enjoys under FRCP 26(g)). *See Voe v. Roman Catholic Archbishop of Portland in Oregon*, No. 3:14-cv-01016-SB, 2015 WL 12669899, at *2 (D. Or. Mar. 10, 2015).
>
> This Court also rejects the requirement . . . imposed by some other courts regarding a threshold evidentiary showing by the requesting party that an opponent's "public" social media account(s) contains relevant information, such that an exploration of non-public information is justified. *See, e.g, Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012). As Judge Tomlinson cautioned in *Giacchetto*, *supra*, such an approach can lead to results that are both too broad and too narrow, and that the Federal Rules of Civil Procedure do not require a party to prove the existence of relevant material before requesting it. *Id.* at n.1 (noting, *inter alia*, that such an approach would act as a complete discovery shield for social media users who kept their posts private).
>
> Still, discovery seeking social media must be relevant to a claim or defense, proportional to the needs of the case, and not unreasonably cumulative, duplicative, or designed to embarrass or harass. FRCP 26(b) and (g); *see also Mailhoit v. Home Depot USA, Inc.*, 285 F.R.D. 566, 570–71 (C.D. Cal. 2012). With regard to requests for production in particular, FRCP 34(b) further requires the requesting party to

---

[2]

describe the items to be produced with "reasonable particularity," such that the responding party is under reasonable notice as to what is, or is not, called for in its response. *Mailhoit*, 285 F.R.D. at 570–71 (invoking Rule 34(b) in disallowing a request for social media postings "that reveal, refer or relate to any emotion, feeling, or mental state of Plaintiff, as well as communications by or from Plaintiff that reveal or refer or relate to events that could reasonably be expected to produce a significant emotion, feeling or mental state"). *Id.* at 571; *but see Simply Storage Mgmt.*, 270 F.R.D. at 436–37 (ordering plaintiff to produce responsive social media posts based on identical request, albeit limited to those plaintiffs alleging severe emotional distress, including post-traumatic stress disorder, rather than simply "garden variety emotional distress claims").

*Allen v. PPE Casino Resorts Maryland, LLC*, __ F. Supp. 3d __, 2021 WL 2434404, at *2 (D. Md. June 14, 2021).

Applying these principles to Plaintiff's Request for Production No. 8, the Court concludes that Plaintiff's request, as originally propounded, fails to "describe with reasonable particularity" that which is sought. Fed. R. Civ. P. 34(b)(1)(A). "'All encompassing' production requests," such as the one at issue here—seeking *all* content and data—fail to meet Rule 34(b)'s reasonable particularity requirement and are disfavored. *Mailhoit*, 285 F.R.D. at 572 (quoting *In re Asbestos Products Liability Litigation (No. VI)*, 256 F.R.D. 151, 157 (E.D. Pa. 2009); *see also Rodriguez-Ruiz v. Microsoft Operations Puerto Rico, L.L.C.*, Civ. No. 18-1806, 2020 WL 1675708, at *4 (D.P.R. Mar. 5, 2020) (citation omitted) ("[C]ourts generally do not "endorse an extremely broad request for all social media site content."); *T.C. on Behalf of S.C. v. Metro. Gov't of Nashville and Davidson Cty., Tennessee*, Civ. No. 3:17-cv-01098, 2018 WL 3348728, at * 14 (M.D. Tenn. Mar. 20, 2018) ("The production of a social media account's contents in full will . . . rarely be appropriate."). However, Defendants' proposed limitation strikes the appropriate balance. As such, Request for Production No. 8 is modified as follows, and Defendants are directed to produce:

For each social media account which you have used and/or maintained since August 27, 2015, please provide a copy of all non-privileged posts by the Defendants where they hold Krista Schrider out as an owner or business partner involved with the

Corporate Defendants or in the operation of any of the Crabcake Factory Restaurants.

This production should occur within seven days of the issuance of this Opinion.

It bears repeating, though, that this Court has previously expressed its doubts as to the probative value of social media discovery to conclusively establish a point in dispute—here, whether Krista Schrider is an "employer" within the meaning of the relevant federal and state statutes. The *Allen* Court examined the varying degrees of reliability attendant to social media evidence when a party alleges "garden variety" emotional distress versus "severe and specific emotional distress." 2021 WL 2434404, at *3. A "deeper social media dive" may be more appropriate in the former, as opposed to the latter, partly because the "inherent shortcomings of social media posts as a reliable and probative indicator of emotional well-being in the absence of specific emotional complaints." *Id.* Moreover, on social media platforms, individuals may have a "tendency to curate a certain image that might understate or overstate one's true emotional state." *Id.* (citing Brown, Kathryn R., *The Risks of Taking Facebook at Face Value: Why the Psychology of Social Networking Should Influence the Evidentiary Relevant of Facebook Photographs*, 14 Vand. J. Ent. & Tech. L. 357, 365 (2012)).

These quandaries apply with equal force in this case. The Court is similarly not certain that Defendants' social media posts will be reliable means to establish Krista Brooks' ownership interest (or lack thereof) in the Corporate Defendants' enterprise. Nevertheless, with the above limitation imposed to meet Rule 34(b)'s reasonable particularity requirement, the Court is willing to permit *limited inquiry* into this social media evidence.

### IV.     *Schedule Modifications*

In accord with this Court's prior Order, (ECF No. 138), the dispositive motions deadline is hereby set for thirty days from the date of this Opinion: August 27, 2021.[3]  The Requests for Admissions deadline is extended to August 13, 2021.

<u>**CONCLUSION**</u>

For the foregoing reasons:

1. Plaintiffs' Motion for Sanctions (ECF No. 86) is DENIED;

2. Plaintiffs' Motion for Sanctions (ECF No. 87) is DENIED;

3. Plaintiffs' Motion for Sanctions (ECF No. 88) is DENIED;

4. Defendants' Motion to Compel (ECF No. 89) is DENIED AS MOOT;

5. Plaintiffs' Motion for Order Resetting Deadlines (ECF No. 100) is DENIED AS MOOT;

6. Plaintiffs' Motion to Compel Production of Documents (ECF No. 139) is GRANTED IN PART and DENIED IN PART.

7. The requests for admission deadline is August 13, 2021.

8. The dispositive motions deadline is August 27, 2021.

A separate order follows.

---

[3] Counsel are reminded of Local Rule 105.2(c), which governs cases where, as here, more than one party intends to file a summary judgment motion.  (ECF Nos. 136 at 2; 137 at 1).  In pertinent part,

> if both parties intend to file summary judgment motions, counsel are to agree among themselves which party is to file the initial motion. After that motion has been filed, the other party shall file a cross-motion accompanied by a single memorandum (both opposing the first party's motion and in support of its own crossmotion), the first party shall then file an opposition/reply, and the second party may then file a reply.

Loc. R. 105.2(c).

Date: July 28, 2021                              _____/s/_____

                                                 J. Mark Coulson
                                                 United States Magistrate Judge