IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEBORAH GASKE *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Case No. 18-2630-JMC |
| CRABCAKE FACTORY SEAFOOD HOUSE, LLC *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Deborah Gaske brought this case as a collective action against Defendants Crabcake Factory Seafood House, LLC, Satellite Restaurants Inc. Crabcake Factory USA (collectively "Corporate Defendants"), John J. Brooks, and Krista Schrider (collectively "Individual Defendants"), pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA"), and supplemental state law claims under the Maryland Wage and Hour Law, Md. Code Ann., LE Art. § 3-401 ("MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., LE Art. § LE 3-501 ("MWPCL").  (ECF No. 1).  Numerous similarly situated individuals opted into the lawsuit shortly thereafter.  (ECF Nos. 9, 10, 20–25, 27–30, 45, 45-1, 48–49, 51, 62). The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C.  636(c) and Local Rule 301.4.  (ECF Nos. 37, 40).

Plaintiffs broadly allege that Defendants (1) failed to pay statutory minimum wages and overtime wages in violation of the FLSA and MWHL, and (2) failed to pay earned wages in violation of the MWPCL.  (ECF No. 1).  Now pending before the Court is Plaintiffs' Motion for Partial Summary Judgment against the Individual Defendants for damages resulting from the alleged FLSA and MWHL violations.  (ECF No. 148).  Each Individual Defendant filed a separate

Response (ECF Nos. 149, 150), and Plaintiffs filed a separate Reply to each. (ECF Nos. 151, 152). All filings have been fully briefed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

**I.      Background**

The Corporate Defendants are restaurants operated under the "Crabcake Factory" brand, including: The Original Crabcake Factory, located at 12000 Coastal Hwy, Ocean City, MD, 21842; Crabcake Factory Seafood House/Crabcake Factory's Loca Madre (otherwise known as Loca Madre Tex Mex)/Downy Oshun Seafood Shack, located at 11805 Coastal Hwy, Ocean City, MD, 21842; Crabcake Factory Poolside, located at 406 S. Baltimore Ave, Ocean City, MD, 21842; and Crabcake Factory Bayside, located at 37314 Lighthouse Rd, Selbyville, DE, 19975. Plaintiffs worked at one or more of the restaurants as tipped employees from the relevant time period of August 25, 2015, to August 25, 2018. Both parties have jointly stipulated that Plaintiffs are covered employees under the FLSA and MWHL.

As a threshold matter, the parties disagree about whether both Individual Defendants are considered "employers" under the relevant statutes subjecting them to individual liability. Although the parties appear to agree that Defendant John J. Brooks is an "employer" for these purposes, the parties disagree about whether Defendant Kristin Schrider meets this definition. Underlying each of Plaintiffs' arguments is the assertion that *both* Individual Defendants qualify as employers under the FLSA and are therefore subject to liability. (ECF No. 148 at 27-34).

Substantively, Plaintiffs allege that the Individual Defendants failed to remit Plaintiffs' tax withholdings, thereby precluding the Individual Defendants from taking a tip credit against Plaintiffs' wages or otherwise satisfying the minimum wage requirements of the FLSA ($2.13/hour) and MWHL ($3.63/hour). *Id.* at 17-20. In addition, Plaintiffs argue that there is an

absence of evidence that the Individual Defendants complied with the FLSA's tip credit notice requirements, further enjoining the Individual Defendants from taking a tip credit against Plaintiffs' wages such that they did not meet minimum wage requirements. *Id*. at 20-24. Further, Plaintiffs assert that the Individual Defendants failed to compensate Plaintiffs for their hours worked in excess of 40 per week that should have been compensated at overtime rates. *Id.* at 24-25. Accordingly, Plaintiffs seek damages stemming from minimum wage losses, the failure to compensate them for all hours worked and overtime losses, and argue that they are entitled to liquidated damages as a matter of law. *Id*. at 26-27.

## II. Summary Judgment

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can do so by demonstrating the absence of any genuine dispute of material fact or by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)). The court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).

However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc*., 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### B. Whether the Individual Defendants Qualify as Employers

Plaintiffs' claims against the Individual Defendants are premised on two assertions: (1) that the Plaintiffs are covered employees under the FLSA and MWHL, and (2) that the Individual Defendants quality as employers within the meaning of the FLSA and MWHL. The parties have stipulated that Plaintiffs have satisfied the first requirement, making discussion of the issue futile. (ECF No. 53). It suffices to note that Defendants concede Plaintiffs worked in an FLSA covered enterprise as provided by statute. *See* 29 U.S.C. § 203(s)(1).

The second underlying assertion proves to be more contentious. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Underlying this definition is the notion that the FLSA is "remedial and humanitarian in purpose, [and] should be broadly interpreted and applied to effectuate its goals." *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999). The Fourth Circuit has adopted the "economic reality test" to determine whether an individual qualifies as an employer under the FLSA. *Escobar v. Steelesoft Mgt., LLC*, No. GLR-12-2426, 2019 WL 3323202, at *4 (D. Md. July 24, 2019). The economic reality test is also used to determine whether an individual qualifies as an employer under the MWHL and MWPCL. *See Castro v. Cordoba Enterprises, LLC*, No. GLR-16-1276, 2019 WL 1409699, at *3 (D. Md. Mar. 28, 2019) ("The economic reality test also determines whether a person is an 'employer' under the MWHL.");

4

*Escobar*, 2019 WL 3323202, at *4 ("Although the MWPCL's definition of 'employer' differs from the FLSA's and MWHL's definitions, courts in this district have applied the economic reality test to MWPCL claims, too."). Under this test, the plaintiff bears the burden of establishing whether the defendant is an employer. *Kerr v. Marshall U. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016)

Relevant factors to consider under the economic reality test include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Kerr*, 824 F.3d at 83 (internal citation omitted). No one single factor is dispositive, and courts ultimately consider the totality of the circumstances in evaluating whether an individual qualifies as an employer under the economic realities test. *Id.*

### 1. Defendant Brooks' Status as an Employer

The pleadings make clear that Defendant Brooks is an owner and operator of the Corporate Defendants. Brooks conceded within his interrogatory responses that he "controlled, managed, or directed the activities" of the Corporate Defendants, and that he was "the only person with authority regarding, all recommendations, decisions, as to the personnel and operations of [the Corporate Defendants]." (ECF No. 148, Ex. 28; Brooks Interrog. Resp. Nos. 2–3). Similarly, Brooks identified himself as the owner of the Corporate Defendants, as well as the owner, CEO, and manager of various corporate entities, including the Corporate Defendants. (ECF No. 148, Ex. 28; J. Brooks Interrog. Resp. Nos. 1–2). Brooks does not dispute this in his response, and even acknowledges the same to be true throughout. (ECF No. 149 at 1-2). The Court therefore finds that Brooks is an employer within the meaning of the FLSA and related Maryland employment statutes.

*2. Defendant Schrider's Status as an Employer*

Plaintiffs further allege that Schrider qualifies as an employer. According to Plaintiffs, Schrider held herself out publicly as an owner of the Corporate Defendants by posting messages on public social media platforms purporting to be an owner and by posting messages in private social media forums designated for employees of the Corporate Defendants, in which Schrider provided scheduling instructions and directions to employees. (ECF 148 at 29-30). Moreover, Plaintiffs allege that additional evidence points to Schrider as an owner and operator of the Corporate Defendants, such as some legal documents listing her as an "owner" and her status as guarantor to a commercial lease under the Crabcake Factory brand restaurant in Delaware. *Id*. at 30-31.

Schrider responds by relying on Brooks' testimony that Brooks, not Schrider, controlled, managed, and retained authority over the Corporate Defendants as well as the restaurants leased under Schrider's name. (ECF No. 150 at 2 and 6). Schrider characterizes her involvement with the Corporate Defendants as nothing more than assisting restaurant staff and helping operations as the "wife of the owner." *Id*. at 3. In support, Schrider insists the social media posts are unreliable as social media itself is an outlet for people to showcase the best, and often aspirational or ingenuine, representations of themselves. *Id*. at 4-6. Further, Schrider argues she purported to be involved in the ownership of the Corporate Defendants solely to create a strong family-centered image for advertising purposes. *Id*.

The Court finds that summary judgment is not appropriate regarding Schrider's status as an employer of the Corporate Defendants within the meaning of the FLSA and related Maryland employment statues. In reaching this decision, the Court finds mixed evidence on this issue (albeit

favoring Plaintiffs), and, as such, must draw all reasonable inferences from that evidence in favor of Defendant Schrider as the non-moving party at this stage.

As an initial matter, Plaintiffs make much of Schrider's social media posts and other information tending to show she had an ownership interest in at least some, if not all, of the Corporate Defendants. Regarding social media posts, this Court has cautioned that the tendency of individuals to "curate" an image of themselves on social media may affect how probative such evidence is adjudged as to certain issues. *See, e.g., Allen v. PPE Casino Resorts Maryland, LLC*, -- F.Supp.3d ----, 2021 WL 2434404 (June 14, 2021 D. Md.) (questioning the value of such evidence in assessing "garden variety" emotional damages versus assessing claimed physical limitations). The Court concludes that a jury must evaluate the context of such posts and assess Schrider's credibility in attempting to provide such context.

The Court does not find the additional evidence— Schrider signing as a guarantor on a business loan, receiving a percentage of revenue from an entity that was sold, being listed as an "owner" on certain legal documents, or clarifying an ongoing interest in one of the Corporate Defendants as part of a separation agreement— to be dispositive so as to preclude due consideration by a reasonable juror to Brooks' and Schrider's sworn testimony to the contrary. Even if Plaintiffs' evidence conclusively established Schrider as having ownership interest(s) in the Corporate Defendants, such an interest is not dispositive of Schrider's status as an "employer." "[A]n individual's status as a high-level corporate shareholder or officer does not automatically impart "employer" liability to that individual, as individual liability 'is dictated by the economic reality of the employment relationship.'" *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 417 (D. Md. 2013) (quoting *Caseres v. S&R Mgmt. Co., L.L..C.*, 2012 WL 5250561 (Oct. 24, 2012 D.Md.), at *3 (quoting *Pearson v. Prof'l 50 States Prot., LLC,* No. RDB–09–3232, 2010 WL

4225533, at *4 (D.Md. Oct.26, 2010))). Instead, whether Schrider is an "employer" must be determined by application of the economic reality test outlined above.

Regarding the first factor, two of the Plaintiffs claim Schrider had the authority to hire and fire employees, and Schrider concedes that at least one Plaintiff claims that Schrider hired her. (ECF No. 152 at 8-9). However, Schrider and Brooks both deny that Schrider had such authority. (ECF No. 149 at 1-2; ECF No. 150 at 6, 9). Even assuming one or two Plaintiffs were hired or fired by Schrider, such fact alone would not establish employer status. For example, in *Garcia v. Frog Island Seafood, Inc*., plaintiffs brought suit against their former employer for unpaid wages and liquidated damages under the FLSA, claiming that defendant was their employer under the economic realities test. 644 F.Supp. 2d 696, 701-702 (E.D.N.C. 2009). The court however nonetheless granted summary judgment in favor of defendant, finding that defendant's limited role in hiring one supervisory employee did not rise to the level of involvement necessary to be considered an employer under the economic realities test and therefore was not personally liable for plaintiff's unpaid wages or liquidated damages. *Id*

Turning to the second factor, Plaintiffs have presented evidence that Schrider did supervise and control employee work schedules or conditions of employment as evidenced in her social media posts. (ECF No. 152 at 9-11). Brooks and Schrider contradict this assertion. (ECF No. 149 at 1-2; ECF No. 150 at 10). Notwithstanding this Court's caution concerning the weight to be given to such posts in general, much of this information was contained in so-called "private facing" posts in an employee group. The Court does not regard such routine matters to be particularly subject to exaggeration or careful curation in the context of how, when, where and why they were made, giving such posts higher potential probative value. Of course, Schrider will have the

opportunity to characterize such activities as occasional or minor, although her success in doing so will be assessed by the jury.

As to the third factor, Plaintiffs have not presented uncontradicted evidence that Schrider helped determine the rate and method of payment. Although some Plaintiffs allege that Schrider determined and maintained payroll, Schrider presented testimonial evidence from both Plaintiffs and Brooks that Schrider was not involved with payroll issues. (ECF No. 150, Exs. 10, 12). Plaintiffs' claims that Schrider determined their rate and method of payment because she assisted in distributing paychecks are not, by themselves, determinative. *See Roley v. Nat'l Prof. Exch., Inc.*, 474 F. Supp. 3d 708, 722 (D. Md. 2020), *aff'd*, No. 20-1898, 2021 WL 2432640 (4th Cir. June 15, 2021) (noting that merely distributing paychecks does not support an individual's status as an "employer").

Fourth, there is mixed evidence on whether Schrider maintained employee records. Schrider and Brooks deny such assertion in sworn testimony. (ECF No. 149 at 1-2; ECF No. 150 at 12). On the other hand, Plaintiffs presented social media evidence that Schrider collected employee identifying information from Plaintiffs, presumably for some business purposes. (ECF No. 152 at 11). Without more, however, Plaintiffs have not shown as a matter of law that this factor weighs conclusively in their favor so as to make a juror's potential reliance on Brooks' and Schrider's testimony to the contrary unreasonable.

Where, as here, the evidence on each of the economic realities factors is mixed, summary judgment is not appropriate. For example, in *Rivera v. Mo's Fisherman Exch., Inc.*, 2018 WL 2020423 at *9 (May 1, 2018 D. Md), Judge Hollander of this Court held that the defendant was not considered an employer as a matter of law, even though he possessed the power to hire and fire employees, was the sole owner of the restaurant, had full control of the enterprise, created and

named the restaurant after himself, developed the menus, authorized purchases, and gave occasional directives to "whoever is around" to perform tasks at the restaurant:

> It is undisputed that Manocheh is the sole owner of all the corporate entities that operate the restaurants. And, plaintiffs assert that he exercises significant operational control over the enterprise. They point out that the restaurants bear his nickname ("Mo's"), that he develops the menu, and authorizes purchases. Only Manocheh and his two bookkeepers have authority to write checks for the restaurants. According to the bookkeepers, Manocheh personally approves pay increases for employees. Moreover, Manocheh admitted that he "could" hire employees, but stated that he does not "have patience" to do so. However, two plaintiffs submitted affidavits stating that Manocheh was involved in their hiring, although defendants appear to dispute Manocheh's involvement.

*Id*. at *10. Notwithstanding this, Judge Hollander declined to grant summary judgment on this issue. *Id*. The Court declines to do so here as well. Such decision does not imply that Plaintiffs are without ample evidence to present to a jury that may well lead to the conclusion that Schrider was an "employer" for purposes of the statutes at issue. The Court, however, will not substitute its own judgment for that of the jury at this stage.

### C. Minimum Wage, Tip Credit, and Overtime Violations

Having determined as a matter of law that Defendant Brooks is an employer, the Court next turns to whether Plaintiffs have demonstrated a lack of genuine dispute as to Brooks' non-compliance with the FLSA and MWHL minimum wage, tip credit, and overtime compensation requirements as a matter of law. (Of course, to the extent a jury ultimately determines Schrider to be an employer, this analysis will apply to her as well.)

Notably, to the extent Brooks offers any defense at all, it is that the various charged violations were not willful. (ECF No. 149 at 6-10). This argument, however, does not relieve a defendant of liability for statutory violations, but is only relevant to whether a two or three-year

statute of limitations applies.[1] Plaintiffs, who bear the burden of establishing willfulness for statute of limitations purposes, have not moved for summary judgment on this issue. (ECF No. 151 at 11). Accordingly, the Court makes no finding as to the willfulness of Defendant's violations at this time.

Turning to the substance of the alleged violations, with regard to minimum wage compliance, employers who properly withhold payroll taxes and remit them to government entities, commonly the IRS (but also the Maryland Comptroller), do not violate the FLSA or MWHL because "[t]axes which are assessed against the employee and which are collected by the employer and forwarded to the appropriate government agency may be included as 'wages.' " 29 C.F.R. § 531.38 (emphasis added); *see also Widjaja v. Kang Yue USA Corp.*, 2011 WL 4460642, *5 (E.D.N.Y Sept. 26, 2011). However, Plaintiffs provide numerous examples of paychecks to demonstrate that Plaintiffs were subject to payroll withholdings that were never properly remitted to the tax authorities. (ECF No. 148, Exs. 23–27). More dispositive, Defendant Brooks admits that he neglected to remit tax withholdings for employees for the tax periods from September 30, 2015, to March 31, 2018. (ECF No. 148, Ex. 20). Because such withholdings, when appropriately remitted, count towards the calculation of whether an employee is paid at least minimum wage, the *failure* to remit them necessarily means that the employer's minimum wage obligations for such workers are not met.

A related issue in the calculation of minimum wage for tipped employees is whether the rules surrounding the so-called "tip credit" are satisfied. "The FLSA requires covered employers to pay 'nonexempt employees' a minimum wage for each hour worked, but allows employers to

---

[1] The standard statute of limitations for FLSA claims is two years, but it is extended to three years for willful violations. 29 U.S.C. § 255(a). Because willfulness is often tied to questions of individual knowledge and motive, willfulness findings often require credibility determinations, which cannot be properly made at summary judgment. *See, e.g., Lyle v. Food Lion, Inc.*, 954 F.2d 984, 987 (4th Cir. 1992).

11

pay less than minimum wage to employees who receive tips." *Prusin v. Canton's Pearls, LLC*, No. JKB-16-0605, 2017 WL 5126156, at *3 (D. Md. Nov. 6, 2017) (first quoting 29 U.S.C. § 206(a); then citing 29 U.S.C. § 203(m)). Section 203(m) of the FLSA allows an employer to pay a sub-minimum wage to its tipped employees provided that the employer complies with the notification requirements of that Section. 29 U.S.C. § 203(m); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 893 (D. Md. 2011) ("Tipped employees … are required to receive at least the minimum wage, but their employers are permitted to pay a direct wage of $2.13 per hour and then take a 'tip credit' to meet the $7.25 per hour minimum wage requirement."). Section 203(m) provides that an employer may not take a tip credit unless (1) "such employee has been informed by the employer of the provisions of this subsection" and (2) "all tips received by such employee have been retained by the employee, except that the subsection shall not be construed to prohibit the pooling of tips among employees who customarily receive such tips." *Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 680-81 (D. Md. 2012). These two requirements are "strictly construed," *Copantitla, et al. v. Fiskardo Estiatorio, Inc*., 788 F.Supp.2d 253 (S.D.N.Y. 2011) (quoting *Chung v. New Silver Palace Rest*., 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)), and the Fourth Circuit has long observed: "[w]hat Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit." *Richard, et al. v. Marriott Corporation, et al.*, 549 F.2d 303, 305 (4th Cir. 1977).

As with the failure to properly remit withholding, Brooks concedes that he violated the above provisions and was not entitled to a tip credit with regards to Plaintiffs' wages. *See* ECF

No. 149 at 6 ("Defendant does not dispute that he failed to follow proper regulations regarding the tip credit under the FLSA . . .."). Thus, Plaintiffs are entitled to judgment as a matter of law as to Defendant Brooks' failure to pay Plaintiffs the requisite sub-minimum wage by failing to remit tax withholdings and the related failure to give the Plaintiffs the requisite notification under 29 U.S.C. § 203(m) and corresponding Federal regulations to be eligible to take a tip credit against their minimum wage obligations.

Plaintiffs further charge that Defendants engaged in the practice of "time shaving" and failed to pay Plaintiffs for all hours worked, including overtime compensation. In support, Plaintiffs set forth numerous examples of discrepancies between time slips and corresponding pay stubs, as well as pay stub evidence that overtime was not paid even in periods where those stubs indicate on their face that more than 40 hours were worked. (ECF No. 148 at 6-7). "To prove a claim under the FLSA for unpaid overtime wages, a plaintiff must show: (1) employment by defendant during the relevant time; (2) qualification as a covered employee under the FLSA statute, by virtue of being employed in an enterprise engaged in commerce or in the production of goods for commerce; and (3) defendant's failure to pay overtime wages. *See, e.g., Jahn v. Tiffin Holdings, Inc.*, No. SAG-18-1782, 2020 WL 1285507, at *3 (D. Md. Mar. 28, 2020); *Quinonez v. Reliable Auto Glass, LLC*, No. CV-12-000452-PHX-GMS, 2012 WL 2848426, at *2 (D. Ariz. July 11, 2012). The elements to prove an overtime claim under the MWHL and the MWPCL are essentially the same. *See McFeely v. Jackson Street Entm't, LLC*, 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014) (explaining the MWHL is the "state statutory equivalent of the FLSA"); *Peters v. Early Healthcare Giver, Inc.,* 97 A.3d 621, 625–26 (Md. 2014) (explaining that "both the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages")." *Ramirez v. 316 Charles, LLC,* 2020

WL 7398807 at *4 (D. Md., Dec. 17, 2020). Defendant Brooks offers no evidence in rebuttal. Thus, Plaintiffs are entitled to summary judgment against Defendant Brooks on this issue as well.

Given the above conclusions, Plaintiffs are entitled to summary judgment on the issue of failure to pay minimum wage (based on a failure to remit withholdings and improper taking of the "tip credit"), failure to pay for all hours worked, and failure to pay overtime. Plaintiffs further seek partial summary judgment as to the amounts due and owing for these failures (exclusive of liquidated damages or an extended limitations period for willful behavior) based on Plaintiffs' expert's calculations using Defendants' own time and pay records. (ECF No. 148 at 24-25). Defendant has not designated an expert to rebut these calculations, nor does Defendant now attempt to dispute its own records. Accordingly, Plaintiffs are granted partial summary judgment in the amounts of $44,934.96 (for failure to pay minimum wage for all hours worked) and $5,460.03 (for overtime) as calculated by their expert.

**D. Liquidated Damages**

Finally, Plaintiffs seek summary judgment on an award of liquidated damages under the FLSA.[2] The FLSA provides that the employer who violates its minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216. Liquidated damages for minimum wage or overtime violations are "the norm." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). Unlike willfulness for statute of limitations purposes, where the burden is on the plaintiff, "only where

---

[2] Plaintiffs do not seek summary judgment on the issue of treble damages under the MWPCL, Md. Ann. Code LE art. 3- 507.1. (ECF No. 148 at 3-4). As acknowledged by Plaintiffs, this issue is a matter for the trier of fact. *Id. See, e.g., Medex v. McCade*, 372 Md. 28, 43-44, 811 A.2d 297, 306-77 (2002) ("[w]hether punitive or compensatory in nature, the determination of discretionary damages is quintessentially a matter for the trier of fact, and therefore, the determination of a bona fide dispute and treble damages was for the jury").

14

'the employer shows to the satisfaction of the court that the act or omission giving rise to [the violation] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of [the] FLSA may the court exercise its discretion to deny liquidated damages." *Id.* (citing 29 U.S.C. § 260). There is a "plain and substantial burden" on the employer to show good faith and reasonable grounds for believing pay practices to be FLSA-compliant. *Id.* (quoting *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994)); *see also Perez v. Mountaire Farms, Inc.*, 650 F.3d 350. 375 (4th Cir. 2011).

Defendants have presented testimony that they relied on a third-party accountant to properly handle tax withholdings and remittances. They also claimed to take various remedial efforts when learning of the FLSA violations, including disassociating with that third-party payroll company, using a new system for payroll and tax purposes, and correcting past tax filings. (ECF No. 149 at 5, 8–9). Such efforts were highlighted regarding the separate but somewhat related issue of "willfulness" under the FLSA for purposes of determining whether a two or three-year statute of limitations applies. *Id*. at 6-8. Defendants reiterate their remediation in their discussion of "reasonable good faith." *Id*. at 8-10. The inquiry regarding willfulness for statute of limitations purposes is not precisely the same as the "reasonable good faith" standard applicable to liquidated damages. Nonetheless, consistent with how similar issues are treated under the MWPCL (see n. 3, *supra*), as with any issue of intent or motivations, the Court is reluctant to address either as a matter of law. *See, e.g., Acosta v. Mezcal, Inc.*, No. JKB-17-0931, 2019 WL 2550660, at *10 (D. Md. June 20, 2019). In *Acosta v. Mezcal*, Chief Judge Bredar declined to grant summary judgment on liquidated damages where defendant presented similar evidence of reliance on a third-party payroll company. *Id*. at *10. Likewise, the Court will decline to do so here.

**III.    Conclusion**

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment is GRANTED with regards to the following issues: (1) Defendant Brooks is deemed an "employer" within the meaning of the FLSA and related Maryland employment statutes; (2) Plaintiffs are covered employees under the FLSA and MWHL; (3) Defendants were not entitled to receive a tip credit against Plaintiffs' wages, and; (4) Defendants failed to pay Plaintiffs in accordance with the applicable minimum wage and overtime requirements. As to these issues, summary judgment against Defendant Brooks is GRANTED in the total amount of $50,394.99 ($44,934.96 for failure to pay minimum wage for all hours worked and $5,460.03 for overtime). Plaintiffs' motion is DENIED on the issue of liquidated damages—which, combined with the willfulness inquiry for determining whether the two or three year statute of limitations applies—could serve to expand Defendant Brooks' monetary exposure at trial. Plaintiffs' motion is also DENIED on the issue of whether Defendant Schrider is deemed an "employer," although the above substantive analysis will apply to her in the event the jury ultimately does so.

Dated: November 15, 2021                                         /s/
                                                         J. Mark Coulson
                                                         United States Magistrate Judge