IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEBORAH GASKE et al, | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Case No: 1:18-cv-02630-JMC |
| CRABCAKE FACTORY SEAFOOD HOUSE, LLC et al, | | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION AND ORDER**</u>

On August 25, 2018, Plaintiff Deborah Gaske brought this collective action pursuant to, *inter alia*, the Fair Labor Standards Act 29 U.S.C. § 201 ("FLSA"). (ECF No. 1). The Defendants against whom Plaintiff brought this case include: (1) Crabcake Factory Seafood House, LLC ("Defendant Seafood House"), (2) Satellite Restaurants Inc. Crabcake Factory USA ("Defendant Satellite"), (3) John J. Brooks, and (4) Krista Schrider. *Id.* Presently before the Court is Plaintiffs' Motion to Permit Discovery Concerning Successorship Pursuant to Fed. R. Civ. P. 25(c) (ECF No. 199). In addition to this Motion, the Court has considered Defendant Brooks' Opposition (ECF No. 201) and Plaintiffs' Reply (ECF No. 202). The Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons more fully explained below, the Court shall grant Plaintiffs' Motion and provide Plaintiffs with a period of ten (10) weeks to conduct discovery for the sole purpose of determining whether RCB Crabcake, LLC is a FLSA successor to Defendant Seafood House.

## I.   RELEVANT BACKGROUND

On October 14, 2020, Defendant Satellite voluntarily filed for relief under Chapter 11 of the United States Bankruptcy Code. (ECF No. 105). On May 26, 2021, Judge Chavez-Ruark of

the United States Bankruptcy Court for the District of Maryland "entered a Sale Order approving the sale of substantially all of Satellite's assets to CCK Holdings, LLC (the 'Purchaser')."  (ECF No. 201 at p. 3).[1]  On April 4, 2022, the Court granted defense counsel's motion to withdraw as counsel for all Defendants.  (ECF No. 176 at p. 1).  Despite extensive notice by the Court to the corporate Defendants regarding Loc. R. 101.1(a)'s requirement that corporate entities retain counsel, neither Corporate Defendant obtained new counsel.  *Id.*  Accordingly, on April 17, 2022, the Court ordered Plaintiffs to initiate the default process against both corporate Defendants.  *Id.* On June 30, 2022, the Clerk entered an Order of Default against both corporate Defendants.  (ECF No. 181).  As of the filing of this Memorandum Opinion and Order, neither corporate Defendant has obtained counsel, and Plaintiffs have not motioned for the Court to enter final default judgment against the corporate Defendants.

Proceeding *pro se*, the individual Defendants—Defendant Brooks and Defendant Schrider—prepared for a jury trial scheduled for July 22, 2022.  *See* (ECF No. 190).  However, Defendant Brooks filed for bankruptcy under Chapter 13 on July 11, 2022, and Defendant Schrider filed for bankruptcy under Chapter 13 on July 13, 2022.  (ECF No. 192 at p. 2; ECF No. 191 at p. 1).  Accordingly, on July 14, 2022, the Court postponed the jury trial scheduled for July 22, 2022, and the Court indicated that it was awaiting Plaintiffs' motion for default judgment as to the corporate Defendants.  (ECF No. 190).

On February 3, 2023, Plaintiffs filed a status report indicating that the individual Defendants' bankruptcy proceedings remain ongoing, and Plaintiffs requested that the Court continue the stay of the case pending the conclusion of the individual Defendants' bankruptcy proceedings.  (ECF No. 194 at p. 1).  However, regarding the corporate Defendants, Plaintiffs

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

indicated that "during the course of the bankruptcy proceedings, Plaintiffs have learned that a new Crabcake Factory restaurant ('Crabcake Factory West') has been opened through (at least) the labor of Defendant John J. Brooks." *Id.* at p. 2. Therefore, before pursuing default judgment against the corporate Defendants, Plaintiffs asked the Court for permission to file a motion requesting a period of discovery for the limited purpose of exploring whether the corporate Defendants had successors to which successor liability could attach. *Id.* On February 3, 2023, the Court issued a marginal order approving Plaintiffs' status report and giving permission to file their motion for successorship discovery. (ECF No. 195). On February 7, 2023, Defendant Satellite— through "former bankruptcy counsel" Paul Sweeney—filed a Line Attaching Order of the United States Bankruptcy Court as an Aid to the Court. (ECF No. 196). The purpose of this filing was to bring to the Court's attention the Sale Order filed by Judge Chavez-Ruark in Defendant Satellite's bankruptcy proceedings. *Id.* According to Defendant Satellite, the successorship discovery sought by Plaintiffs is prohibited by the Sale Order. *Id.* at pp. 1–2.

Plaintiffs filed their Motion on March 31, 2023, Defendant Brooks filed an Opposition on April 12, 2023, and Plaintiffs filed their Reply on April 25, 2023. After understanding the overview of this case's posture as described immediately above, the positions of Plaintiffs and Defendant Brooks are straightforward. Plaintiffs "believe that RCB Crabcake, LLC is a 'reincarnation' of [Defendant] Crabcake Factory Seafood House, LLC." (ECF No. 199 at p. 10). Defendant Brooks contends that Plaintiffs' Motion "is in contempt of Judge [Chavez-]Ruark's Sale Order . . . ." (ECF No. 201 at p. 1).

## II.     STANDARD OF REVIEW

### A.  Successor Liability

Plaintiffs' Motion is premised on legal principles not yet fully explored in the Fourth Circuit.  Specifically, Plaintiffs are seeking discovery—prior to a final judgment against Defendant Seafood House—as to whether non-party RCB Crabcake, LLC (d/b/a Crabcake Factory West) could be held liable as a successor to Defendant Seafood House for FLSA violations.  *See generally* (ECF No. 199).  Plaintiffs seek a ten-week period of limited discovery as to this issue for the purpose of sharpening their inquiry prior to filing a Fed. R. Civ. P. 25(c) motion to substitute RCB Crabcake, LLC for Defendant Seafood House.  *Id.* at p. 12.

"While the Fourth Circuit has not opined whether or not successor liability is available under the FLSA, the trend among the courts that have decided the question is to recognize successor liability in FLSA cases including various district courts, along with the Ninth and Seventh Circuits."  *Carrillo v. Borges Constr., LLC*, No. GJH-13-641, 2016 WL 5716186, at *5 (D. Md. Sept. 30, 2016) (citing *Valdez v. Celerity Logistics. Inc.*, 999 F. Supp. 2d 936, 941 (N.D. Tex. 2014); *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995) ("we conclude that successorship liability exists under the FLSA"); *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013) ("We suggest that successor liability is appropriate in suits to enforce federal labor or employment laws.")) (internal quotation marks omitted).  "Thus, this Court finds that successor liability is appropriate under the FLSA."  *Carrillo,* 2016 WL 5716186 at *5.

"While there is not a consensus as to how the Court should determine successor liability, both the Seventh and Ninth Circuits have noted that the Court should inquire into whether or not there was a continuity of business."  *Id.* (citing *Teed*, 711 F.3d at 766 ("Whether there is continuity between the operations and work force of the predecessor and the successor, as there is in this case,

4

which favors successor liability on the theory that nothing really has changed."); *Steinbach*, 51 F.3d at 845–46 ("Under the NLRA, successor liability can attach when 1) the subsequent employer was a bona fide successor and 2) the subsequent employer had notice of the potential liability. Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and the predecessor.")).

### B. Extending the Scheduling Order to Permit a Brief Period of Limited Discovery

Plaintiffs first argue that rather than applying Fed. R. Civ. P. 16(4) in determining whether to permit the requested discovery, the Court should look to Fed. R. Civ. P. 25(c).  (ECF No. 199 at pp. 12–13) (citing *Alfadda v. Fenn*, Nos. 89 CIV. 6217 (LMM), 90 CIV. 4470 (LMM), 1993 WL 307757, at*2 (S.D.N.Y. Aug. 6, 1993) ("a motion to amend the complaint in the present actions for the purpose of, *inter alia*, adding additional parties and successor liability claims is scrutinized not under the general provisions of Rule 15(a) of the Federal Rules of Civil Procedure, but rather under the more specific provisions of Rule 25(c) of the Federal Rules of Civil Procedure.")).  Fed. R. Civ. P. 25(c) provides:

> If an interest is transferred, the action may be continued by or  against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.  The motion must be served as provided in Rule 25(a)(3).

Despite this assertion by Plaintiffs, the Court is unaware of any caselaw which considers the situation Plaintiffs currently present, i.e., motioning for limited successor liability discovery prior to a final judgment being entered and over a year after discovery has closed.  However, as explained more fully below in Section III, the Court is unaware of any limitation on permitting Plaintiffs' requested discovery period other than Fed. R. Civ. P. 16(4): "A schedule may be modified only for good cause and with the judge's consent."

### III.     ANALYSIS

#### A.   Plaintiffs Provide Good Grounds for Permitting Successor Liability Discovery as to RCB Crabcake, LLC.

As indicated above, the rules the Court must apply in determining whether successor liability exists is undecided and subject to influence from various other jurisdictions.  Therefore, as Plaintiffs have not yet motioned for a Fed. R. Civ. P. 25(c) substitution, the Court will refuse to issue an advisory opinion to the parties regarding the standards the Court will look to if and when such a motion is filed.  However, Plaintiffs' Motion has set forth a sufficient amount of information warranting the Court's grant of an opportunity for Plaintiffs to investigate their theory of successor liability.

Plaintiffs have alleged that RCB Crabcake, LLC retains several common aspects of Defendant Seafood House, e.g., the shared "Crabcake Factory" name and even a shared food menu. (ECF No. 199 at p. 9).  Plaintiffs allege that RCB Crabcake, LLC is substantially continuing the same restaurant operation as Defendant Seafood House.  *Id.* at p. 10.  Furthermore, Plaintiffs allege that at least one Plaintiff in this case is currently employed by RCB Crabcake, LLC.  *Id.*  Plaintiffs further allege that Defendant Brooks has had or continues to have an ownership interest in RCB Crabcake, LLC.  *Id.* at p. 5.  Although Plaintiffs' Motion is often unclear regarding the link between Defendant Brooks' extensive work with RCB Crabcake, LLC and Plaintiffs' theory of successor liability, Plaintiffs have raised sufficient questions to permit a period of discovery.  Additionally, Plaintiffs argue that RCB Crabcake, LLC has been aware of the potential for successor liability, and Defendant Seafood House is no longer capable of providing Plaintiffs with relief.  *Id.* at p. 11.

Defendant Brooks, through counsel, filed an Opposition to Plaintiffs' Motion.[2] (ECF No. 201).  Defendant Brooks presents one argument in his Opposition: Plaintiffs' requested discovery is completely at odds with Judge Chavez-Ruark's Sale Order in Defendant Satellite's bankruptcy proceedings.[3]  In particular, Defendant Brooks relies on three paragraphs in the Sale Order: paragraph 4, paragraph 7, and paragraph 11.

Paragraph 4 provides:

> <u>Free and Clear.</u> Except as otherwise provided herein or in the sale to the Successful Bidder, the Debtor is authorized to transfer the Assets to the Successful Bidder and, as of the Closing, **the Successful Bidder shall take title to and possession of the Assets pursuant to the sale to the Successful Bidder, including, without limitation, the Contracts, free and clear of all Interests of any kind or nature whatsoever, including all claims (for purposes of this Order, the term "claim" shall have the meaning ascribed to such term in section 101(5) of the Bankruptcy Code) and/or interests arising in any way in connection with any agreements, acts or failures to act, of the Debtor or any of the Debtor's predecessors or affiliates, whether known or unknown, contingent or otherwise, whether arising before or subsequent to the commencement of the Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under federal or state laws or doctrines of successor or transferee liability.** All such Interests shall attach to the proceeds attributable to the Assets against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority that such Interests now have against the Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtor or its estate, as applicable, may possess with respect thereto.

*Id.* at pp. 11–12 (emphasis added).

---

[2] In their Motion, Plaintiffs spend the closing pages admonishing Defendant Brooks' attorney—Paul Sweeney—for "yet again fil[ing] papers in this case without entering his appearance." *Id.* at pp. 15–16.  However, before Defendant Brooks filed an Opposition, Mr. Sweeney entered his appearance on behalf of Defendant Brooks on April 6, 2023. (ECF No. 200).  As such, the Court will not again remind Mr. Sweeney of the need for attorneys to either "enter an appearance on behalf of a pro se party they are assisting or to refrain from such assistance." (ECF No. 173 at pp. 2–3 (citing *Johnson v. Citibank, N.A.*, 63 F. Supp. 3d 545, 548 (D. Md. 2014) (other citations omitted)).

[3] In their Reply, Plaintiffs argue that "Defendant Brooks has no standing" to challenge Plaintiffs' Motion. (ECF No. 202 at p. 1).  However, Defendant Brooks has not had the opportunity to address this argument, and regardless, the Court need not—at this juncture—consider Defendant Brooks' standing.  Defendant Brooks' argument merely requires the Court to review Judge Chavez-Ruark's Sale Order, and Defendants' Opposition has provided the Court with easier access to that Sale Order.  (ECF No. 201-1).

Paragraph 7 provides:

Injunction. **Except as otherwise provided herein, all persons and entities, including, but not limited to, the Debtor's employees, former employees,** all debt security holders, equity security holders, administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, lessors, customers, trade creditors and all other creditors, holding Interests of any kind or nature whatsoever against or in the Debtor or in the Debtor's interests in the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, such Assets or with respect to any Interest arising out of or related to the Transaction, **shall be and hereby are forever barred, estopped and permanently enjoined from commencing, prosecuting or continuing in any manner any action or other proceeding of any kind relating to the Assets or their claims against the Debtor, against the Successful Bidder, its properties, its successors and assigns, alleged or otherwise, its affiliates or such Assets.** Following the Closing, no holder of an Interest in the Assets shall interfere with the Successful Bidder's title to or use and enjoyment of the Assets and the Contracts based on or related to such Interests, or any actions that the Debtor may take in its Chapter 11 Case.

*Id.* at pp. 12–13 (emphasis added).

Paragraph 11 provides:

No Successor Liability. The Successful Bidder, its affiliates, successors and assigns shall not be deemed, as a result of any action taken in connection with the Transaction, (i) to be a successor to the Debtor or its estate, (ii) to have, *de facto* or otherwise, merged or consolidated with or into the Debtor or its estate, or (iii) to be a continuation or substantial continuation of the Debtor or any enterprise of the Debtor, and **the Successful Bidder shall have no successor or vicarious liability of any kind or character**, including, but not limited to, under any theory of antitrust, environmental, successor, assignee or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtor or any obligation of the Debtor arising prior to the Closing, including, but not limited to, liabilities on account of any taxes or other government fees, contributions or surcharges arising, accruing or payable under, out of, in connection with, or in any way relating to, the Assets prior to the Closing. Except as otherwise provided herein, **the Transaction shall not result in the Successful Bidder, its affiliates, members, or shareholders, or the Assets, having any liability or responsibility for, or being required to satisfy in any manner**, whether in law or in equity, whether by payment, setoff or otherwise, directly or indirectly, (i) any claim against the Debtor or against any insider of the Debtor or (ii) any Interest. The Successful Bidder has

> given substantial consideration to the Debtor's estate. The consideration given by the Successful Bidder shall constitute valid and valuable consideration for the release of any potential claim of successor liability of the Successful Bidder, which release shall be deemed to have been given in favor of the Successful Bidder by all holders of Interests against the Debtor or the Assets. For the purposes of this section of this Order, all references to the Successful Bidder shall include the Successful Bidder's affiliates, subsidiaries and shareholders.

*Id.* at pp. 14–15 (emphasis added).

Here, there is no dispute that the "successful bidder" and purchaser of Defendant *Satellite's* assets was CCK Holdings, LLC. (ECF No. 201 at p. 3). The only argument that Defendant Brooks makes in imploring the Court to find that the Sale Order protects RCB Crabcake, LLC from successor liability discovery regarding Defendant *Seafood House* is that "[b]oth the Purchaser and RCB Crabcake, LLC are cooperatively using the assets purchased under the Sale Order, and both are protected from interference or discovery." *Id.* at p. 5. This argument fails. RCB Crabcake, LLC did not purchase Defendant Satellite's assets in the Sale Order. Furthermore, the only possible means of relief that RCB Crabcake, LLC could have from the Sale Order would be available only if RCB Crabcake, LLC were an affiliate, member, or shareholder of CCK Holdings, LLC. Of course, the assets purchased by CCK Holdings, LLC—even if used cooperatively with RCB Crabcake, LLC—are protected under the Sale Order. However, without any argument or supporting evidence indicating a shielded relationship with CCK Holdings, LLC, the Court can only conclude that RCB Crabcake, LLC can seek no shelter from successor liability for Defendant Seafood House under the Sale Order applicable to Defendant Satellite.

### B. There Is Good Cause to Extend the Scheduling Order to Permit a Ten-Week Discovery Period Limited to RCB Crabcake, LLC's Potential Successor Liability.

RCB Crabcake, LLC was formed by Ronald C. Brooks—Defendant Brooks' brother—in March 2017. (ECF No. 199). RCB Crabcake, LLC's charter was forfeited by the State Department of Assessments and Taxation on October 15, 2021. *Id.* at p. 5. On June 1, 2022, in anticipation of Defendant Brooks opening Crabcake Factory West, RCB Crabcake, LLC filed Articles of Reinstatement with SDAT. *Id.* Throughout the course of Defendant Brooks' bankruptcy, Defendant Brooks has not disclosed that RCB Crabcake, LLC was reinstated as of June 1, 2022. *Id.* Plaintiffs only discovered this information after Defendant Brooks' bankruptcy attorney disclosed in a January 18, 2023 email that Defendant Brooks was working for RCB Crabcake, LLC. *Id.* at pp. 13–14. As soon as Plaintiffs discovered this information, they promptly notified the Court and requested formal briefing on the issue of successor liability discovery. *Id.* at pp. 14–15. The Court cannot fault Plaintiffs for the delay in pursuing successor liability discovery against a once forfeited and unknowingly revived corporation. As such, the Court finds that there is good cause to grant Plaintiffs a period of ten (10) weeks to pursue successor liability discovery solely against RCB Crabcake, LLC.

To be very clear, the Court is currently making no finding that successor liability as between Defendant Seafood House and RCB Crabcake, LLC exists, or announcing the standard it would use in assessing any such liability. There is also an insufficient factual record before the Court as to whether RCB Crabcake, LLC is an affiliate, member or shareholder of CCK Holdings, LLC so as to protect RCB Crabcake, LLC from such liability as a result of the Bankruptcy Court's order governing Defendant Satellite's sale of assets. But the Court does find that there has been a sufficient showing by Plaintiffs to justify the limited discovery they seek.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

- Plaintiffs' Motion (ECF No. 199) is GRANTED, and Plaintiffs can pursue successor liability discovery solely as to RCB Crabcake, LLC for a period of ten (10) weeks.  That period shall begin on May 9, 2023, and extend through July 18, 2023;

- RCB Crabcake, LLC will be entitled to pursue any course of action it deems fit, including the pursuit of a protective order against Plaintiffs' sought-after discovery;

- On July 25, 2023, Plaintiffs will provide the Court with a status update indicating whether Plaintiffs will proceed with filing a motion to substitute under Fed. R. Civ. P. 25(c).


Date: May 8, 2023                                        _____/s/_____
                                                                                J. Mark Coulson
                                                                                United States Magistrate Judge

11